UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | | |
|---|---|---|---|
| KEVIN D. ETHERIDGE and CHRISTOPHER M. MOORE, | ) ) ) | | |
| Plaintiffs, | ) ) ) | | |
| v. | ) ) | No.: | 4:13-CV-68-HSM-SKL |
| SHERIFF MURRAY BLACKWELDER, CHRIS THORNTON and ROBERT ROWE, | ) ) ) ) ) | | |
| Defendants. | ) | | |

**MEMORANDUM and ORDER**

Six prisoners in the Lincoln County jail in Fayetteville, Tennessee filed this pro se civil rights complaint for injunctive and monetary relief under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Tennessee [Doc. 1]. After assessing the civil filing fee and dismissing four Plaintiffs, the Middle District transferred the complaint to this district based on venue [Docs. 12, 13]. Th

**I.      Screening the Complaint**

A civil complaint filed by prisoners must be reviewed to whether it states a claim entitling Plaintiffs to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If the pleading fails to state a claim or is frivolous or malicious or seeks damages from a defendant who is immune from such relief, the lawsuit must be dismissed. In screening this complaint, the Court bears in mind that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519,

520 (1972). Still, the pleading must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citations and internal quotation marks omitted).

Conclusory allegations and unwarranted inferences from alleged facts need not be accepted as true. *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2) and 28 U.S.C. § 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

## II.     The Allegations

The format of Plaintiffs' complaint is unconventional and the allegations made therein are confusing. Christopher M. Moore, one of the two remaining Plaintiffs, has not signed at the bottom of the complaint, but instead has affixed his signature underneath Claim 10. Underneath Claims 25 and 26 are the respective signatures of Matthew Wade Whitehead and Timothy R. Groce. Both Whitehead and Groce were dismissed as Plaintiffs by the Middle District before the case was transferred to this Court. The complaint is signed by Kevin D. Etheridge and Jeremy N. Kirkland. Kirkland was also an original Plaintiff who was dismissed by the Middle District. The complaint contains twenty-seven claims. Many claims have been stated using the first person pronoun, without identifying which of the two Plaintiffs is the aggrieved individual.

Of necessity, the Court has broadly construed the claims, which are as follows:

2

1. I was placed in lock down for 15 days without reason

2. I filed a grievance of July 7, 2013, for breathing medication. The nurse informed me to get it or other medication I need PER my doctor. I would have to be seen by my doctor, their doctor wasn't [indiscernible] for it, but how is my doctor to make a house call?

3. Inmates have not received bleach or gloves on the clean-up cart, which contains dusty brooms on it.

4. On June 19, 2013, we were served ice water without a reason for four days.

5. One of two toilets which must be used by 23 inmates only flushes half the time.

6. The sink has no cold water.

7. As of July 7, 2013, twenty-three men are housed in a cell designed to hold sixteen inmates and seven inmates must sleep on the floor, not in a boat or a bunk.

8. The jail receives funding to supply each inmate new shoes, but inmates receive shoes that are in disrepair. Two inmates have fallen down the stairs in two weeks.

9. Inmates are supposed to receive handbooks, but they do not receive handbooks.

10. On May 30, 2013, Christopher Moore was throwing up blood, was placed in D-Block "Lock Down" for "observation," and lay there for 6½ hours, throwing up blood, with no button to call for help and no running water, until a guard walked through to check on him, at which point he was moved to a separate cell in lock down.

11. Lincoln County jail is supposed to issue inmates one white shirt, one pair of white boxers, and one pair of white socks; the jail receives funding for this attire; but inmates are not provided with their allotment of clothing.

12. The Lincoln County jail should provide inmates with a nurse who is on call 24 hours a day, but it does not have a nurse on call 24 hours daily.

13. I have been either on lock down or behind a cage in population for seven to twenty-three hours a day with no button to summon help should I need help.

14. I complained about black mold in the showers, underneath bunks, and along the walls.

15. One inmate, Christopher Moore, was overcharged on a medical call. Inmates are charged $5.00 for a medical call, but Moore was charged $15.00.

16. In just over a month, four letters I had deposited in the outgoing mail were returned, purportedly because I used too many stamps when, in reality, I used no stamps.

17. Inmates are denied the right to attend church on a regular basis.

18. Inmates rarely receive recreation and are lucky to have recreation once weekly for a full hour.

19. Inmates do not have access to a law library at their discretion, but instead may go to the law library only twice monthly. Moreover, the law books are so out of date that they are not useful, or, if they are useful, they have parts that are missing. Also, the law books can be used only in the law library.

20. Of the twenty-two people who are housed in a sixteen-person cell, only four are Black and three of the four Black inmates are sleeping side-by-side on the floor. This constitutes racism.

21. The reply to a grievance/request which asked for a response identifying the district and division in which the Lincoln County jail is located was dated July 12, 2013, but was not received by inmates until July 15, 2013.

22. Inmates did not receive a response to their request for notarized paperwork. Some requests are unanswered, lost, or take longer to answer, and sometimes only half an answer is received.

23. On July 12, 2013, after an inmate was diagnosed with staphylococcus, the cell block was not disinfected, despite inmates' requests that this be done.

24. On July 19, 2013, "I Kevin Etheridge" sent a sealed letter for mailing, but the letter was opened, and then returned to me with this notation written on it: "couldn't be sent out cause [sic] it's been open [sic]." This constitutes harassment "since the "facility knows about my lawsuit" [Doc. 1 p. 11].

25. (This claim was asserted by Mathew Wade Whitehead, who has been dismissed as a Plaintiff.)

26. (This claim was asserted by Timothy R. Groce, who has been dismissed as a Plaintiff.

27. On July 21, 2013, the inmate who had staphylococcus and who had been isolated was returned to the cell block before he completed his medication and before he was cleared medically to return. This shows that they did not follow protocol.

[Doc. 1 pp. 7-12].

### III. LAW and ANALYSIS

#### A. Official Capacity

Named in the complaint as Defendants are Lincoln County Sheriff Murray Blackwelder, Chris Thornton, and Robert Rowe, all of whom are sued in their official capacities [Doc. 1 at 1, 4, and 6]. A lawsuit against a defendant in his official capacity is treated as an action against the governmental entity which he represents because any judgment awarded would have to be paid by the represented entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell v. New York*

5

*City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), *Accord, Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) ("A suit against an individual in 'his official capacity' has been held to be essentially a suit directly against the local government unit and can result in that unit's liability to respond to the injured party for his injuries."). Yet, Lincoln County cannot be held liable merely because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

Instead, to succeed on a claim against Lincoln County or against Defendants in their official capacities, Plaintiffs must show that they have suffered harm because of a constitutional violation and that a policy or custom of the entity caused the harm. *Id.*; *Soper v. Hoben*, 195 F.3d 845, 853-54 (6th Cir. 1999). Put simply, Plaintiffs must "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir. 1993) (citation omitted). Additionally, Plaintiffs must show that the County was itself a "moving force" behind the deprivation, so that its policy or custom played a part in the constitutional violation. *Graham*, 473 U.S. at 166.

There are no allegations that any Lincoln County policy or custom caused the constitutional violations alleged herein. *See Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994) (noting that the policy requirement for municipal liability "is meant to distinguish those injuries for which the government as an entity is responsible under § 1983 from those injuries for which the government should not be held accountable") (internal citation and quotation marks omitted).

Since it is well settled that "[a] plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom," *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013), and since Plaintiffs have not identified any policy, tied it to Lincoln County, or demonstrated how a policy led to any injury, there is no

6

valid claim for damages under the theory of municipal liability against any Defendant. *See Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.") (quoting *Monell*, 436 U.S. at 691).

**B.     Standing**

Seventeen claims on the list are of a general nature and, seemingly, have been asserted on behalf of all inmates at the Lincoln County jail. Plaintiffs have not indicated how these alleged deprivations or untoward conditions have caused them personal injury. This failure implicates the standing doctrine, which derives from Article III's restriction of federal court jurisdiction to "cases and controversies." U.S. CONST. art. III, § 2, cl.1.

Typically, a prisoner has standing to assert his own Eighth Amendment rights, but not those of other inmates. *Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990). A plaintiff establishes standing if he demonstrates three things: (1) an injury in fact or a harm that is "actual or imminent, not conjectural or hypothetical," (2) causation, and (3) redressability. *Id.* at 155 (citations omitted). Here, there are no allegations of an injury in fact.

Absent a plea of personal harm, Plaintiffs have failed to satisfy the first element. Therefore, Plaintiffs have not shown that they have standing to pursue the claims which alleged harm to the general population of inmates at the Lincoln County jail. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court"). The Court concludes that Plaintiffs lack standing to assert Claims 3-9, 11-12, 17-23 and 27.

C.   **Plaintiff Moore's Claims**

Plaintiff Moore has not signed the bottom of the complaint; instead, he has appended his signature underneath a single claim—Claim 10 [Doc. 1 at 8]. In that claim, it is alleged:

> As of May 30th, 2013[,] a Christopher Moore was throwing up blood and was placed in D-Block "Lock Down" for "observation," but yet he lay in a locked down cell still throwing up blood, with no button to call for help in, nor did he have running water. He lay in that cell for 6 ½ hours before a guard walked threw [sic] to finally check on him, at witch [sic] point[,] they moved him to a separate cell in lock down.

[*Id.*].

The Cruel and Unusual Punishment provision of the Eighth Amendment protects prisoners from the infliction of "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[D]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'" which violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

An Eighth Amendment claim is composed of two parts: an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind—one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994). To be sufficiently serious, the medical need must be either (1) obvious to a layperson or (2) supported by medical evidence, like a physician's diagnosis. *Id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995).

A medical need is serious under the first criteria, if an average person without specialized medical training would easily recognize the need for immediate professional treatment by observing the person or being told of his symptoms. *Johnson v. Karnes*, 398, F.3d 868, 874 (6th

8

Cir. 2005). To establish deliberate indifference, a plaintiff must plausibly allege that defendants were aware of facts from which they could infer that he faced a substantial risk of harm and that they actually drew that inference. *Farmer*, 511 U.S. at 837.

Yet, a prisoner whose claims are based on a theory of medical negligence has not stated a claim under § 1983 because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. Also, no claim is stated where some medical treatment is given and the dispute is over the adequacy of such treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). To illustrate this point, consider that "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).

The Court finds that vomiting blood is a condition which a layperson would recognize as calling for immediate medical attention; thus, it is a condition which constitutes a serious medical need. *See Hale v. Rao*, No. 9:08-CV-612, 2009 WL 3698420, at *5 (N.D.N.Y. Nov. 3, 2009) (vomiting blood is a serious medical need) (listing cases), *see also Westlake*, 537 F.2d at 859-60. However, Plaintiff Moore has not indicated that the three named Defendants knew anything about his condition. After all, Plaintiff Moore must adduce plausible contentions to show that Defendants knew facts from which they could infer that Plaintiff was confronting a substantial risk of harm and that they actually drew that inference. Plaintiff has not carried his burden and, accordingly, he has failed to state a claim against Defendants.

The allegations in Claim 15 involve Plaintiff Moore, though he did not sign his name below this claim as he did in Claim 10. In Claim 15, it is alleged that one inmate, Christopher

9

Moore, was charged $15.00 for a medical visit, which represents a $10.00 overcharge, since the fee for a medical visit is only $5.00 per visit.

To the extent that Claim 15 can be viewed as having been asserted by Plaintiff Moore, the Court infers that he is alleging a claim for a due process violation, involving the alleged overcharging of his inmate trust account.

Assuming that Plaintiff Moore impliedly is claiming that he was subjected to an unauthorized, intentional deprivation of his personal property, i.e., a sum of money, without the procedures which were due him, he does not state such a claim unless he pleads and proves that he has no meaningful state post-deprivation remedies available or that such remedies as are available are ineffective to protect his rights. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986).

Plaintiff has not met his burden. Indeed, Tennessee has such a remedy, *see McQuiston v. Ward*, 2001 WL 839037 * 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201)), and Plaintiff has not shown that it is inadequate. Simply put, Plaintiff has not stated a claim which would entitle him to relief under § 1983. *See Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001) (observing that "if the copayment charge does deprive the inmates of property within the meaning of the Due Process Clause, the inmates failed to allege that the post-deprivation procedure is inadequate") (citing *Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983)).

**D.     Plaintiff Etheridge's Claims**

The Court generously construes the contentions encompassed in Claims 1-2, 13-14, 16 and 24 in the complaint to have been asserted by Plaintiff Etheridge because they are alleged

10

using the first person pronoun "I" and because Plaintiff Etheridge appears to have been the drafter of the pleading.

    1. **Lock Down Claims**

In Claim 1, Plaintiff Etheridge maintains that he was in lock down status for 15 days without reason, and in Claim 13, he contends that he has either been on lock down status or housed behind a cage in the general population for 7 to 23 hours a day, without a button to summon help should he need help.

The Due Process Clause in the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. However, the Due Process Clause itself confers no liberty interest "in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991) ("The federal Constitution, standing alone, does not confer upon prisoners a 'liberty interest' in any particular form of confinement."). Yet "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," where the confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U. S. at 484 (citing *Sandin v. Conner*, 515 U.S. 472, 483- 84 (1995)).

Plaintiff Etheridge has not described anything that would show that he has suffered the requisite hardship discussed in *Sandin*. *Sandin*, 515 U.S. at 484 (finding no due process violation where inmate was placed in disciplinary confinement for 30 days); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (determining that a prisoner's 61–day stay in administrative segregation was not atypical and significant); *Argue v. Hofmeyer*, 80 F. App'x

11

427, 429 (6th Cir. 2003) (concluding that inmate's confinement to his cell for twenty-three hours per day, five days a week, did not violate the Eighth Amendment); *but see Harris v. Caruso*, 465 F. App'x. 481,484 (6th Cir. 2012) (noting that due process requires periodic review of confinement for inmate's 8-year placement in administrative segregation). Furthermore, Plaintiff Etheridge has not proximately connected any of the three Defendants to the alleged lock down. He therefore fails to state a claim for relief under § 1983.

### 2. Medical Claim

In Claim 2, Plaintiff Etheridge maintains that, on July 7, 2013, he filed a grievance complaining that he was told by the nurse to "get" his breathing medication or any other medication he needed through his doctor. Once again, Plaintiff has not proximately connected Defendants with the denial of his breathing medication. Without some facts from which to infer that Defendants were deliberately indifferent to Plaintiff Etheridge's need for breathing medication, which the Court assumes, for purposes of screening this complaint, to be a serious medical need, he has failed to state an *Estelle* claim.

### 3. Confinement Conditions Claims

In Claim 14, Plaintiff Etheridge maintains that he complained that three different areas in the jail contained black mold.

Complaints about jail conditions fall within the scope of the "Cruel and Unusual Punishments" provision in the Eighth Amendment, which prohibits conditions that involve the wanton and unnecessary infliction of pain and result in the serious deprivation of basic human needs. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). An Eighth Amendment claim, as noted earlier, has both an objective element, i.e., a sufficiently serious deprivation, and a

12

subjective element, i.e., deliberate indifference on the part of a defendant. *Farmer*, 511 U.S. at 834.

As was true in the previous claims, Plaintiff Etheridge does not tie the alleged wrongful housing condition to any named Defendant. Accordingly, he has failed to satisfy the subjective prong of an Eighth Amendment claim.

It may be that Plaintiff believes that Defendants are responsible for operating the Lincoln County jail within constitutional bounds and, thus, that they have a duty to ensure that the facility is run in a way that does not infringe upon the rights of inmates housed in the jail. If Plaintiff's theory of recovery is based upon this reasoning, he fails to state actionable § 1983 claims against Defendants.

The law is settled that § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). While respondeat superior does not provide a valid basis of liability, *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell,* 436 U.S. at 691; *Rizzo v. Goode*, 423 U.S. 362 (1976), Plaintiff can still hold Defendants liable so long as he can demonstrate that they implicitly authorized, approved, or knowingly acquiesced in any alleged wrongdoing of a subordinate. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989). An "affirmative link" must exist between the subordinate's misconduct and the supervisor's authorization or approval, tacit or otherwise, of the wrongdoing. *Rizzo*, 423 U.S. at 371. But supervisors cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

13

As Plaintiff Etheridge does not allege that Defendants authorized any unconstitutional conduct on the part of the unidentified subordinate who received the complaint(s) about black mold, there is nothing from which to conclude that they condoned any such wrongful behavior. Plaintiff's assertions, if they are based on a theory of respondeat superior, fail to state a claim since that theory does not work in a § 1983 action.

4. **First Amendment Claims**

In Claim 16, Plaintiff Etheridge contends that four pieces of outgoing mail were returned to him, purportedly because he had used his allotment of free stamps, when in reality he had used none of his stamp allotment. Plaintiff Etheridge does not tie the alleged the return of his letters to any named Defendant. If Plaintiff's Etheridge is attempting to hold Defendants liable for the acts of the individual unnamed correctional officers who returned the mail, as the Court has explained above, he fails to state a viable theory of constitutional liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983.").

In Claim 24, Plaintiff Etheridge maintains that he sent a sealed letter for mailing, but that the letter was opened, then returned, marked, "couldn't be sent out cause [sic] it's been open [sic]." Plaintiff Etheridge alleges that this constitutes harassment since "the facility" knows about his lawsuit.

The Court reads these allegations as an implied claim for retaliation based on Plaintiff Etheridge's exercise of his First Amendment right to file a lawsuit. A prisoner establishes a retaliation claim if he shows: (1) that he engaged in protected conduct; (2) that an adverse action was taken against him which would deter a person of ordinary firmness from continuing to

14

engage in that conduct; and (3) that the adverse action was motivated by the protected conduct. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The Court finds that the retaliatory act complained of (i.e., the return of a single letter, which Plaintiff could have re-sealed and deposited in outgoing mail) is so inconsequential that it would not deter a person of ordinary firmness from continuing to litigate. *Id.* at 398 (noting that "certain . . . deprivations are so de minimis that they do not rise to the level of being constitutional violations"). The Court also sees no contentions of fact to support a retaliatory motive. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (finding that "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983'" quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

Plaintiff Etheridge has failed to state a claim for retaliation.

## IV. CONCLUSION

Based on the above discussion, Plaintiffs Moore and Etheridge lack standing to assert claims on behalf of other inmates and they have also failed to state viable § 1983 claims against Defendants. Accordingly, this case will be dismissed sua sponte under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE